IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICE J. AVERY, | ) | Case No. 1:19-cv-1963 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OF OPINION** |
| SOCIAL SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Patrice J. Avery, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g) and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 12.  Because the ALJ failed to apply proper legal standards in evaluating the weight to assign to Dr. Griggs's treating source opinion, the Commissioner's final decision denying Avery's application for SSI is VACATED and the case is REMANDED for further consideration consistent with this order.

## II.      Procedural History

On February 6, 2015, Avery applied for SSI, which was denied at the initial level of review.  (Tr. 119, 282).[1]  Rather than appealing the decision, Avery filed a new application for SSI on October 23, 2015.  (Tr. 291).  Avery alleged that she became disabled on February 2,

---

[1] The administrative transcript is in ECF Doc. 10.

2002[2] due to asthma, fibromyalgia, bursitis, bronchitis, tendonitis and depression.  (Tr. 291, 318).  The Social Security Administration denied her application initially and upon reconsideration.  (Tr. 204, 210).  Avery requested an administrative hearing.  (Tr. 215).  ALJ Amy Budney heard Avery's case on October 25, 2017, and denied the claim in a June 25, 2018, decision.  (Tr. 15-26).  On June 27, 2019, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-5).  On August 27, 2019, Avery filed a complaint challenging the Commissioner's decision.  ECF Doc. 1.

## III.    Evidence

### A.    Personal, Educational and Vocational Evidence

Avery was born in 1971 and was 44 years old when she filed her application.  (Tr. 291). She graduated from high school and earned an associate degree.  She had worked as a hair stylist and as a receptionist in the 1990s.  (Tr. 39-40, 319).

### B.    Relevant Medical Evidence[3]

#### 1.    Physical Impairments

On January 15, 2013, Avery treated with Jessica Griggs, D.O., who noted that Avery suffered from chronic joint and muscle pain.  (Tr. 596).  Physical examination showed that Avery was 5'3" tall and weighed 213 pounds.  Dr. Griggs observed slight edema in the lower extremities, left worse than right.  She diagnosed mild intermittent asthma; pure hypercholesterolemia; myalgias and mastitis; esophageal reflux; obesity; acute sinusitis; constipation and dermatitis.  (Tr. 597).

Avery went to the emergency room on February 15, 2013 for fibromyalgia pain in her back.  She reported a 20 year history of pain.  She said she was out of one of her medications and

---

[2] Avery was previously awarded SSI benefits in 2002, but payments ended in July 2014 because, in April 2012, her resources exceeded $2,000 due to receiving money from her uncle when he died.  (Tr. 163-165).

[3] Avery's record includes medical evidence dating back earlier than 2013.  Because those records are similar to Avery's more recent records, I have begun my summary with her 2013 records.

the pain had gotten markedly worse over the past two days with increased stiffness.  Examination showed tenderness throughout her back and both right and left sides with multiple trigger points.  She was unable to tolerate any other examination of her back.  She was discharged after receiving a 60 mg Toradol intramuscular injection and prescription for Flexeril.  Her diagnosis was exacerbation of fibromyalgia pain.  (Tr. 431-433).

On July 31, 2013, Dr. Griggs treated Avery for follow-up and medication refills. Avery reported her psychiatrist had left the practice and she needed psychiatric and pain medication refills.  Dr. Griggs's diagnoses were similar to those assessed in January 2013.  (Tr. 594).

Avery also treated with Dr. Dan Shamir for pain management and monthly medication refills.  (Tr. 466, 463, 461-462, 460, 459, 457, 455, 453, 452, 486, 450-451, 446-448, 444, 429-431, 434-443).  On October 10, 2013, Avery requested a right trochanteric bursial injection, which had helped her in the past.  (Tr. 426-427).  X-rays of her pelvis and right hip were normal.  (Tr. 483).  The injection scheduled for November 8, 2013 was cancelled because Avery had bronchitis.  (Tr. 427).

Avery followed-up with Dr. Griggs on October 21, 2013 for medication refills.  She complained of dizziness and body aches.  She rated her fibromyalgia pain as an 8/10 all the time and her pain with medication as 6/10.  Recent blood work showed an elevated white blood count.  Avery appeared fatigued; her strength was 4/5 in her upper extremities due to pain.  (Tr. 588).  Dr. Griggs thought Avery's dizzy spells may be related to an infection or neurologic cause.  She ordered more blood work and referred her to neurology.  (Tr. 590-591).

Avery followed-up with Dr. Shamir on January 16, 2014.  She reported that right trochanteric pain had retruned and she requested another injection.  (Tr. 424).  Her lumbar range of motion was reduced to 60° forward flexion, 10° extension, and lateral bending of 10° bilaterally.  (Tr. 425).  An x-ray of her right hip was taken, and Dr. Shamir administered an

3

injection to her right hip.  Her pain improved after the injection, and she was ambulating with markedly reduced pain.  (Tr. 426).

Avery saw Dr. Griggs on March 25, 2014 for follow-up and medication refills.  Dr. Griggs referred Avery to an eye doctor for vision changes and to a dermatologist for dermatitis.  Dr. Griggs diagnosed fibromyalgia, hypercholesterolemia; mild intermittent asthma; and esophageal reflux.  (Tr. 522-525).

Avery treated with Dr. Shamir on April 17, 2014.  She reported that the trochanteric bursal injection had helped, but that she still had pain in her back.  Neurontin had helped in the past but was no longer helpful.  Physical examination revealed tenderness to palpation in lumbosacral paraspinal muscles, buttocks and trochanters.  She had 80° forward flexion in her lumbar spine.  Dr. Shamir recommended CoQ10 for Avery's fibromyalgia.  He noted that Avery had not tolerated Cymbalta or Savella.  (Tr. 422-423).

On June 5, 2014, Avery followed up with Dr. Griggs for medication refills.  She requested screening for diabetes mellitus due to family history.  Avery's listed medications were Flonase, Restoril, Benadryl, Topamax, Prilosec, Mevacor, Soma and Ultram.  (Tr. 512-516).

Avery went to the emergency room on September 6, 2014 with body pain, mainly in her lower back.  She described her pain as achy and constant with no radiation and gradually increasing since September 2010.  She had full range of motion and 5/5 motor strength.  An EKG revealed normal sinus rhythm with 1st degree AV block, septal myocardial infarction – age undetermined.  The diagnoses were urinary tract infection and fibromyalgia muscle pain.

Avery followed-up with Dr. Griggs on September 23, 2014 following her emergency room visit for a urinary tract infection.  She reported she had experienced intermittent chest pain and needed further work-up for her abnormal EKG.  Examination showed normal heart sounds

with regular rate and rhythm.  Dr. Griggs diagnosed AV block, 1st degree and unspecified chest pain.  (Tr. 507-511).

Avery saw Dr. Shamir on November 6, 2014.  Her blood pressure was 144/84 and she complained of diffuse pain due to fibromyalgia.  Physical examination showed patella reflexes 1+ bilaterally, and Achilles reflexes 1- bilaterally.  Avery had 5/5 strength in both ankles dorsiflexion, knees and hips.  Her sensation was intact in both lower extremities.  Her lumbar forward range of motion was 70°.  She had 5/5 strength in her hands, wrists, elbows and shoulders.  Her reflexes and sensation were intact.  She had positive Finkelstein sign on the right and tenderness to palpation of both lateral condyles.  Resisted wrist and finger extension reproduced epicondylar pain and tenderness to palpation over DeQuervain's area on the right.  Dr. Shamir diagnosed fibromyalgia with no focal neurological deficits.  (Tr. 417-419).

On November 10, 2014, Avery met with cardiologist, Dr. Aleksandr Rovner, for an evaluation of her abnormal EKG.  Dr. Rovner reviewed Avery's EKG and opined that her atypical chest discomfort was likely airway related.  He recommended a stronger statin to control her lipids.  (Tr. 501-506).  Avery also saw Dr. Griggs for follow-up and medication refills on November 10, 2014.  Avery reported migraine headaches.  (Tr. 496-497).

Avery saw Dr. Griggs on March 19, 2015.  Avery reported fever, chills and night sweats.  She also reported that her back pain was 10/10 and that she had not had any medications for the past two weeks.  She reported difficulty with activities of daily living such as cooking and cleaning.  She also said she had urinary hesitancy and suspected another urinary tract infection.  She also complained of sinus and pressure.  Her weight was 221 pounds and the range of motion in her back had decreased.  Dr. Griggs diagnosed fibromyalgia, allergic rhinitis and urinary frequency.  (Tr. 564-569).  Dr. Griggs refilled Avery's prescription for Ultram on April 6, 2015 and referred her for a colonoscopy on May 8, 2015.  (Tr. 563-564).

5

On June 4, 2015, Avery followed-up with Dr. Griggs for refills.  She requested a referral to psychiatry for sleep disturbance, anxiety and depression.  Dr. Griggs diagnosed major depression, recurrent, not otherwise specified, and referred Avery to psychiatry.  (Tr. 559-561).  Avery saw Dr. Griggs several more times during 2015.  (Tr. 556-559).

On February 8, 2016, Avery say Dr. Griggs for sinus pressure and congestion.  She was under a lot of stress because her father was in hospice and her mother was in a nursing home.  She reported sleep disturbance, anxiety, and depression.  On May 9, 2016, Avery saw Dr. Griggs for pain in both knees.  X-rays showed mild narrowing of the left and right knee medial compartment joint spaces.  X-rays of her abdomen showed nonspecific, likely nonobstructive bowel gas pattern.  (Tr. 927-929).

On July 27, 2016, Avery treated with Dr. Shamir for fibromyalgia and diffuse body pain – worse on the right.  Physical examination showed tenderness to palpation over the De Quervain's area on the right. She had 4/5 strength in both ankle dorsiflexion, knee extension, hip flexion, hip abduction, and hip adduction.  Her reflexes were 1+ in both Achilles.  Her range of motion was to 60° flexion, 10° extension, and 10° lateral bending bilaterally.  She displayed diffuse tenderness to palpation in the cervical, thoracic and lumbosacral spinal muscles, right greater than left.  She was also tender over the buttocks and trochanters bilaterally, right greater than left.  Dr. Shamir diagnosed fibromyalgia, right De Quervain's syndrome and lateral epicondylitis, and trochanteric bursitis bilaterally.  He prescribed Voltaren gel and splinting and scheduled an injection for two months.  (Tr. 970-973).

Avery returned to see Dr. Shamir on December 28, 2016.  She continued to have pain in her back, buttock and trochanteric bursal area.  She requested a trochanteric bursal injection, which was scheduled in two weeks.  (Tr. 1037-1038).

Avery went to the emergency room on April 19, 2017.  She reported generalized body aches after moving several boxes yesterday.  She had a severe muscle spasm in her back during triage despite taking Soma/Tramadol.  She was tearful on examination.  The diagnosis was fibromyalgia and chronic pain.  She was prescribed Toradol and Valium.  (Tr. 996-997).

### C.    Relevant Opinion Evidence

#### 1.    Treating Physician – Jessica Griggs, D.O. – November 9, 2017

On November 9, 2017, Dr. Griggs completed an Off-Task/Absenteeism Questionnaire. (Tr. 1082).  Dr. Griggs listed Avery's impairments as: depression and anxiety, diabetes mellitus, type 2, fibromyalgia and migraines.  She opined that Avery would have difficulty concentrating and staying on task.  She stated that Avery had pain in her head and extremities.  She opined that Avery would be drowsy and need to lie down and rest every four to six hours.  She opined that, on average, Avery's impairments would cause her to be absent from work about four times a month and off-task at least 20% of the work day.  She also marked a box stating that Avery's severity of limitations had existed since at least January 5, 2015.  (Tr. 1082).

#### 2.    Consultative Examiners – Jorethia Chuck, Ph.D., and Michael Faust, Ph.D. – January and April 2015

On January 8, 2015, Avery underwent a psychological evaluation by Jorethia Chuck, Ph.D. (Tr. 534-540), and on April 22, 2015, she underwent a psychological evaluation by Michael Faust, Ph.D.  (Tr. 542-549).  The consulting examiners assessed mild to moderate limitations related to Avery's depression and anxiety.

### 3.    State Agency Consultants

On March 28, 2015, state agency consultant, Leon D. Hughes[4], reviewed Avery's medical records and opined that she could lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 6 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. (Tr. 112). He opined that Avery was unlimited in her ability to push and/or pull other than the limitations for lifting and carrying. He opined that she could occasionally climb ramps and stairs; could never climb ladders/ropes/scaffolds or crawl; could occasionally balance, stoop, kneel, or crouch; and must avoid concentrated exposure to hazards such as machinery, heights, etc. (Tr. 112-113).

On November 10, 2015, Dr. Elaine M. Lewis reviewed Avery's records and opined that she could lift/carry 50 pounds occasionally, 25 pounds frequently; stand and/or walk 6 hours in an 8 hour workday; sit (with normal breaks) for a total of 6 hours; frequently climb ramps/stairs; never climb ladders/ropes/scaffolds; was unlimited in her ability to balance and kneel; could frequently stoop, crouch and crawl; but needed to avoid concentrated exposure to extreme cold, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and hazards, such as machinery, heights, etc. (Tr. 128-130). On May 27, 2016, Dr. Gerald Klyop reviewed Avery's records and concurred with Dr. Lewis's opinions of Avery's physical limitations. (Tr. 142-144).

On May 20, 2015, Kristen Haskins, Psy.D., reviewed Avery's records and found that she had the severe impairments of fibromyalgia, obesity and affective disorders. She opined that Avery had a moderate degree of restriction in activities of daily living; moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration persistence or pace. Avery's records did not show any repeated episodes of decompensation.

---

[4] Dr. Hughes and Dr. Haskins reviewed Avery's records in early 2015 when she first re-applied for SSI after exhausting the inheritance money from her uncle. When her first application was denied at the initial level, Avery filed another claim rather than appealing the initial decision.

(Tr. 108-111).  Avery was found to have the ability to complete simple, repetitive tasks, but may have difficulty completing moderately complex 3-4 step tasks due to lapses in concentration and attention related to depression.  Dr. Haskins opined that Avery had the ability to attend and concentrate for periods of two hours in a setting with simple to moderately complex, short cycle tasks, not more than moderate pace demand, and where she could work away from others. Avery had an irritable demeanor but managed to be pleasant and cooperative during the psychiatric exam.  She had the ability to interact appropriately with others in a setting with expectations for occasional, superficial interactions.  She had the ability to adapt to routine workplace changes in a setting with at most moderate time and production demands.  (Tr. 114-116).

On January 18, 2016, Paul Tangeman, Ph.D., reviewed Avery's records and assessed a mild degree of restriction in activities of daily living, mild difficulties and maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  (Tr. 126-127).  He found that Avery only had limitations in adaptation, specifically the ability to perform routine tasks in a static work setting.  (Tr. 130-131).

On May 25, 2016, Patricia Kirwin, Ph.D., reviewed Avery's records and opined that she could maintain attention and concentrate for 1-4 step tasks consistently and 5-6 step tasks occasionally; and that changes should be infrequent and explained in advance.  (Tr. 144-145).

### D.  Relevant Testimonial Evidence

Avery testified at the administrative hearing on October 25, 2017.  (Tr. 38-75).  She resided in an apartment with her mother.  (Tr. 38).  She had a driver's license, but did not drive because she did not have a vehicle.  She had an associate of arts degree and formerly worked as a hair stylist.  (Tr. 39).

9

Avery was unable to work due to pain in her right shoulder, both hips, both knees and both ankles.  (Tr. 40).  To alleviate pain, Avery took hot showers, medication and slept.  (Tr. 41).  Her medications caused sleepiness and dizziness.  (Tr. 41-42).  She formerly received injections for pain, but the doctor who administered them no longer accepted her insurance.  (Tr. 66-67).  She also had migraines lasting three to four days, twice a year.  She took Topamax for the migraines.  (Tr. 52).  Avery also suffered from depression.  (Tr. 54-56).  Avery slept during the days and had insomnia at night.  (Tr. 42-43).  It was difficult for her to get out of bed due to pain.  (Tr. 43).

Avery was able to do chores by spreading them out and taking breaks.  (Tr. 44-46).  She was no longer able to do laundry; her nephew did that for her, but she was able to fold the clothes after they were washed.  She was no longer able to mop the floors due to pain in her wrist.  She was no longer able to crochet.  (Tr. 46).  She no longer enjoyed reading due to depression.  (Tr. 59-60).  She was able to go grocery shopping, but her nephew helped her put the groceries away.  She required rest the day after she vacuumed or went shopping.  (Tr. 47).  Avery prepared food for herself and her mother.  (Tr. 87).  Before her father died, she also paid his bills.  (Tr. 87).  She went to a social event once or twice per year.  (Tr. 61-62).

Avery was able to sit for about 20 minutes before she needed to change positions.  She was able to walk for 20 minutes.  (Tr. 53).  However, after walking, her knee would swell and she would need to elevate it and ice it for the rest of the day and the next.  (Tr. 53-54).  She was able to lift 10 pounds.  Her concentration and memory were poor.  (Tr. 58).

Vocational Expert Eric David Dennison ("VE") also testified at the hearing.  (Tr. 75-84).  The ALJ asked the VE to consider an individual who could perform medium exertional work, but could frequently climb ramps and stairs, stoop, crouch and crawl; could never climb ladders, ropes or scaffolds; could never be exposed to unprotected heights, dangerous moving mechanical

parts, or operate a motor vehicle; should avoid concentrated exposure to extreme cold, humidity, wetness, as well as dust, odors, fumes and pulmonary irritants; could understand remember, and carry out simple, routine tasks; could occasionally tolerate changes in a routine work setting that were well explained and introduced slowly. (Tr. 77).

The VE opined that this individual would be able to work as a linen room attendant, a caretaker, and as a marker. (Tr. 77-78). If the individual could frequently interact with the public, coworkers and supervisors; and frequently use foot controls bilaterally; and frequently handle on the right, she would still be able to perform those jobs. (Tr. 78). However, if she was limited to occasional handling on the right and occasional foot controls bilaterally, her ability to do those jobs would be limited by 40%. (Tr. 79). Similarly, if she could only occasionally reach, the VE opined that her ability to do the jobs would be reduced by 40%.

If the first hypothetical individual was limited to light jobs, she would still be able to perform the job of marker and would also be able to perform the jobs of checker and garment sorter. (Tr. 79-80). If the individual was limited to light jobs and occasional handling on the right, she would only be able to perform the jobs of ironer and usher. (Tr. 81). The VE opined that employers do not permit lying down during the workday. (Tr. 82). They will tolerate up to 10% of off-task time and up to one absence per month. (Tr. 83-84).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2.  Avery had the following severe impairments: asthma, mild narrow right and left knee, right De Quervain syndrome, right wrist volar flexion carpal instability, history of migraines, bi trochanteric bursitis, mild degenerative joint disease of the hips, chronic pain syndrome, myofascial pain, fibromyalgia, personality disorder, mood disorder, and major depressive disorder. (Tr. 17).

4.  Avery had the residual functional capacity to perform a reduced range of medium work. She could frequently use bilateral foot controls, and could frequently handle on the right. She could frequently climb ramps and stairs,

stoop, crouch and crawl; but she could never climb ladders, ropes or scaffolds. She could never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle.  She needed to avoid concentrated exposure to extreme cold, humidity, wetness, as well as dust, odors, fumes, and pulmonary irritants.  She could understand, remember and carry out simple, routine tasks; and could occasionally tolerate changes in a routine work setting.  Any changes must be well explained and introduced slowly.  Finally, she could frequently interact with supervisors, coworkers and the public.  (Tr. 20-21).

Based on all her findings, the ALJ determined that Avery had not been under a disability from July 13, 2015, the date her application was filed (presumably through the date of the ALJ's decision).  (Tr. 26).

## V.      Law & Analysis

### A.      Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. §§ 405(g), 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or reweigh the evidence.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion.  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Elam*, 348 F.3d at 125 ("The decision must be affirmed if . . . supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record.").  This is so because the Commissioner enjoys a "zone of choice"

within which to decide cases without being second-guessed by a court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if supported by substantial evidence, however, the court will not uphold the Commissioner's decision when the Commissioner failed to apply proper legal standards, unless the error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant

can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.  Consulting Physicians' Opinions

Avery first argues that the ALJ's RFC finding is not supported by substantial evidence because she did not consider the medical opinions of the state agency consultants, Leon Hughes, M.D., and Kristen Haskins, Psy.D., two opinions from her prior claim file in 2015.  ECF Doc. 6 at 6-7.

At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives.  20 C.F.R. §§ 404.1527(c), 416.927(c).[5]  An ALJ must give a treating physician's opinion controlling weight, unless the ALJ articulates good reasons for discrediting that opinion.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Avery's first argument is not related to a treating source.  Rather, she argues that the ALJ erred in how she assessed the state-agency reviewing physicians' opinions.

"[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'"  *Gayheart*, 710 F.3d at 376.  Instead, an ALJ must weigh such opinions based on: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the

---

[5] 20 C.F.R. §§ 404.1527, 416.927 applies to Avery's claims because she filed them before March 27, 2017.

physician's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion. *Id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, an examining physician's opinion is due more weight than a nonexamining physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 375. An ALJ does not need to articulate good reasons for the weight assigned to a nontreating or nonexamining opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (declining to address whether an ALJ erred in failing to give good reasons for not accepting non-treating physicians' opinions). An ALJ may rely on a state agency consultant's opinion and may give it greater weight than other nontreating physician's opinions if it is supported by the evidence. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015).

> Regarding the opinions of the state agency reviewing physicians, the ALJ stated:
>
> As for the opinion evidence, the undersigned gives the opinions of the State agency medical consultants, Elaine Lewis, M.D., and Gerald Klyop, M.D., partial weight. The consultants opined that the claimant was capable of medium exertion work, with no manipulative limitations. (Ex. C4A and C5A). Great weight is given to the finding that the claimant is capable of medium exertional work. However, based on additional evidence received at the hearing level, the undersigned finds that het claimant has more limitations than those assessed by the consultants. (Hearing Testimony). As such, less weight is given to their postural and manipulative limitations.

(Tr. 23). The ALJ never mentioned the medical opinion evidence from the prior claim file including the opinions of Dr. Hughes and Haskins.

Avery correctly points out that the ALJ's RFC determination conflicts with Dr. Hughes's opinion that she was limited to light work (rather than medium) and Dr. Haskin's opinion that Avery was limited to working with others on an occasional, superficial basis, in a setting with moderate time and production demands. It certainly would have been better if the ALJ had expressly addressed these opinions. From Avery's perspective, it would be difficult to understand how the more recent medical consultants opined that she could do more physically-

demanding work when she testified that her condition was worsening and that she was able to do less. These first medical consultants to review her file determined that she was able to do less than those who later reviewed it and were, therefore, more consistent with Avery's own statements regarding her limitations.

There are a couple of problems with Avery's argument related to the reviewing medical opinions. First, the regulations do not require the ALJ to provide good reasons for rejecting a non-examining source's opinion. *See Smith.*, 482 F.3d at 876. As argued by the Commissioner, the ALJ likely credited the more recent reviewing physicians' assessments of Avery's RFC. The ALJ was not required to expressly state this in her decision. Moreover, the record indicates that the ALJ did consider the opinions of Dr. Hughes and Dr. Haskins; the ALJ decision stated that she gave "careful consideration [to] the entire record." (Tr. 20).

Second, and more significant here, adopting the opinions of Dr. Hughes and Dr. Haskins would not have changed the outcome of the ALJ's decision, because the VE testified that there were a significant number of jobs Avery could perform if she were limited to light work (Tr. 79-80) and those jobs required only occasional interaction with the public, coworkers and supervisors. (Tr. 80). In other words, even if the ALJ had adopted the limitations opined by Dr. Hughes and Dr. Haskins, substantial evidence would have still shown that a significant number of jobs existed that Avery could perform. At worst, the ALJ's failure to expressly address the opinions of Drs. Hughes and Haskins was harmless error. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *see also Kobetic v. Comm'r of Soc. Sec.,* 114 F. App'x 171, 173 (6th Cir. 2004) (noting that in such instances courts are not required to "convert judicial review of agency

action into a ping-pong game") (citation omitted).  Because the ALJ's ultimate conclusion at

Step 4 would not have changed, Avery's claim of error relating to the ALJ's alleged failure to

consider the opinions of Dr. Hughes and Dr. Haskins must be denied.  The ALJ applied proper

legal standards in evaluating the opinions of the current-claim state agency reviewing physicians

and, even if she had adopted the limitations opined by the state agency consultants who reviewed

Avery's earlier claim, the ALJ would still have found that Avery was not disabled.  For this

reason, the court would not remand the case on this basis alone.  However, because the court is

remanding the case for further consideration of the treating source's opinion, the ALJ should

discuss all of the medical source opinions and other relevant evidence in determining Avery's

RFC at Step Four.

      **C.**     **Treating Physician Rule**

      Avery next argues that the ALJ failed to provide good reasons for assigning partial

weight to the opinion of her treating primary care physician, Jessica Griggs, D.O.  ECF Doc. 11

at 8-11.  The court agrees.  An ALJ must give a treating physician's opinion controlling weight,

unless the ALJ articulates good reasons for discrediting that opinion.  *Gayheart v. Comm'r of*

*Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Good reasons for giving a treating source's opinion

less-than-controlling weight include: (1) a lack of support by medically acceptable clinical and

laboratory diagnostic techniques; (2) inconsistency with or contradictory findings in the treating

source's own records; and (3) inconsistency with other substantial evidence in the case record.

*See Biestek*, 880 F.3d at 786 ("An ALJ is *required* to give controlling weight to a treating

physician's opinion, so long as that opinion is supported by clinical and laboratory diagnostic

evidence [and] not inconsistent with other substantial evidence in the record." (citing 20 C.F.R.

§ 404.1527(c)(2)); *Gayheart*, 710 F.3d 365, 376; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d

1176, 1179 (11th Cir. 2011) (stating that good reasons include that: "(1) [the] treating

physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."). But inconsistency with nontreating or nonexamining physicians' opinions alone is not a good reason for rejecting a treating physician's opinion. *See Gayheart*, 710 F.3d at 377 (stating that the treating physician rule would have no practical force if nontreating or nonexamining physicians' opinions were sufficient to reject a treating physician's opinion).

If an ALJ does not give a treating physician's opinion controlling weight, the ALJ must assign weight to the opinion based on: the length and frequency of treatment, the supportability of the opinion, the consistency of the opinion with the record as a whole, whether the treating physician is a specialist, the physician's understanding of the disability program and its evidentiary requirements, the physician's familiarity with other information in the record, and other factors that might be brought to the ALJ's attention. *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Nothing in the regulations requires the ALJ to explain how he considered each of the factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Biestek*, 880 F.3d at 786 ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor."). However, the ALJ must at least provide good reasons for the ultimate weight assigned to the opinion. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (acknowledging that, to safeguard a claimant's procedural rights and permit meaningful review, 20 C.F.R. §§ 404.1527(c) and 416.927(c) require the ALJ to articulate good reasons for the ultimate weight given to a medical opinion). When the ALJ fails to adequately explain the weight given to a treating physician's opinion, or otherwise fails to provide good reasons for the weight given to a treating physician's opinion, remand is appropriate. *Cole*, 661 F.3d at 939; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that the failure to identify good

reasons affecting the weight given to an opinion "'denotes a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based upon the record.'" (citing *Rogers*, 486 F.3d at 243)).

> Regarding Dr. Griggs's opinion, the ALJ stated:
>
> In late 2017, the claimant's treating source, Jessica Griggs, D.O., provided a medical source statement (Ex. C18F). The statement is given partial weight because Dr. Griggs did not provide much in the way of functional limitations, and did not provide an explanation or objective findings in support of her assessment.

(Tr. 24). The ALJ was required to assign controlling weight to Dr. Griggs's opinion unless it lacked support by medically acceptable clinical and laboratory diagnostic techniques; was inconsistent with her own records; or was inconsistent with other substantial evidence in the case record. *Biestek*, 880 F.3d at 786. Here, the ALJ did not comply with Agency regulations. Rather than citing evidence showing that Dr. Griggs's opinion was not supported by other evidence or contradicted her own treatment notes, the ALJ simply criticized the opinion because it did not provide more functional limitations or adequate support. The ALJ seems to have placed the burden on the treating physician to demonstrate that her opinion was worthy of controlling weight. But the agency's regulation requires *the ALJ* to provide good reasons for assigning less than controlling weight to the opinion. It was the ALJ who had the burden of citing other evidence in the record that contradicted Dr. Griggs's opinion, not Dr. Griggs who was required to state additional functional limitations or further support for her opinions.

Here, the Commissioner appears to concede that the ALJ did not assign controlling weight to Dr. Griggs's opinion and did not address the factors necessary for the treating source analysis. ECF Doc. 13 at fn 12. However, the Commissioner suggests several bases upon which this court could nevertheless find that the ALJ's failure to follow the treating physician's rule was harmless error. The court recognizes that, sometimes, there is a fine line between a decision

19

that must be remanded for failing to follow the treating physician rule and those that should be affirmed because the failure to follow the rule caused no harm.

The Commissioner first argues that Dr. Griggs's opinion regarding absenteeism is an issue reserved for the Commissioner, citing *Kerns v. Saul,* 2019 U.S. Dist. LEXIS 195825 (W.D. Ky. 2019) for support.  Conversely, Avery cites Sixth Circuit precedent stating that there was no regulatory or case support for an ALJ's finding that "the issue of disability based on frequent absenteeism… remains an issue reserved to the Commissioner."  *Sharp v. Barnhart,* 152 F. App'x 503, 509 (6th Cir. 2005).   Avery's case law controls.  The ALJ could have rejected Dr. Griggs's opinion that Avery would miss four or more days per month – but not simply because it was a matter reserved to the Commissioner.  Such a rejection would not have been supported by the law.  Furthermore, the ALJ did not state this as a reason for assigning only partial weight to Dr. Griggs's opinion.

The Commissioner also argues that the ALJ could have rejected Dr. Griggs's opinion on the basis that it was a "checkbox" opinion.  This legal proposition is correct.  A check-box opinion without any accompanying explanation is "weak evidence at best."  *Hernandez v. Comm'r of Soc. Sec.,* 644 F. App'x 468, 474; *see also, Pellegrino v. Comm'r of Soc. Sec.,* 2020 U.S. Dist. LEXIS 50395 (N.D. Ohio, March 23, 2020).  But here, Dr. Griggs did more than simply check boxes.  The form she completed requested "reasons why your patient is likely to be off-task" and Dr. Griggs supplied written responses.  She stated that Avery would have difficulty staying on task due to her depression and anxiety, her diabetes mellitus type 2, fibromyalgia and headaches.  She also stated that Avery would have difficulty concentrating and staying on task due to pain in her head and extremities and drowsiness caused by her medications.  (Tr. 1082).  These responses were more than simple check-box answers and the ALJ did not state good reasons for rejecting them.

Moreover, as with the Commissioner's other argument related to absenteeism, the ALJ did not point out that Dr. Griggs's opinion was a check-box form as a basis for assigning less than controlling weight.  These are merely after-the-fact reasons proposed by the Commissioner to justify the ALJ's assignment of partial weight to the opinoin of a treating source.  But, the Commissioner's post-hoc rationalizations do not cure the ALJ's failure to provide good reasons for not assigning controlling weight to Dr. Griggs's opinions.  *Steckroth v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 44895, E.D. Mich. March 30, 2012, quoting *Hyatt Corp v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order. . . . [nor is the court] free to accept 'appellate counsel's rationalization for agency action in lieu of reasons and findings enunciated by the Board.'") (citations omitted).

The ALJ failed to comply with the treating physician rule in discounting Dr. Griggs's opinion.  And there is no way to know if she considered the factors required to be applied to Dr. Griggs's opinion because she never mentioned any of them.  *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  As stated above, the Commissioner's post hoc rationalizations do not persuade this court that this was harmless error.  The Sixth Circuit has stated that the ALJ's failure to identify good reasons for discounting the weight given to an opinion "'denotes a lack of substantial evidence, even whe[n] the conclusion of the ALJ may be justified based upon the record.'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citing *Rogers*, 486 F.3d at 243)).  Such is the case here.  Because the ALJ failed to follow the proper legal standards in discounting Dr. Griggs's opinion, the ALJ's decision must be remanded for further consideration consistent with this opinion.

**D.      Fibromyalgia and Subjective Symptom Complaints**

Avery contends that the ALJ's analysis of Avery's symptom complaints did not comply with SSR 16-3P.  The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, 1996 SSR LEXIS 4, was clarified in SSR 16-3p, 2016 SSR LEXIS 4 to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).  The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." See 2016 SSR LEXIS 4,[WL] at *11.  Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1.   Daily activities;

2.   The location, duration, frequency, and intensity of pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.   The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.   Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.   Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.   Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.,* 2016 SSR LEXIS 4, 2017 WL 5180304, at *7-8; see also 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96-7p, 1996 SSR LEXIS 4.

Even after SSR 16-3 clarified the rules concerning subjective symptom evaluation and removed the term "credibility" from the regulations, the procedures for reviewing an ALJ's assessment under SSR 16-3p, 2016 SSR LEXIS 4 are substantially the same as the procedures under SSR 96-7p, 1996 SSR LEXIS 4. *Delong v. Comm'r of Soc. Sec.,* No. 2:18-cv-368, 2019 U.S. Dist. LEXIS 16167 (S. D. Ohio, Feb. 1, 2019).  Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, 2016 SSR LEXIS 4, with few exceptions.  *Whicker-Smith v. Comm'r of Soc. Sec.,* No. 1:18-cv-52. 2019 U.S. Dist. LEXIS 29085 at *16; *See Duty v. Comm'r of Soc. Sec.,* 2018 U.S. Dist. LEXIS 159013, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms.  *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).  An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").  In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate her symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions.  SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x

460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).

Subjective symptom complaints relating to fibromyalgia must be handled slightly differently than those arising from other impairments. Ordinarily, a claimant must substantiate her pain complaints by citing objective medical evidence that her medical condition: (1) actually caused severe pain; or (2) is so severe that it would be reasonably expected to cause the alleged pain. *Blankenship*, 874 F.2d at 1123 (citing *McCormick v. Sec'y of Health & Hum. Servs.*, 861 F.2d 998, 1003 (6th Cir. 1988), and *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847 (6th Cir. 1986)). However, such objective evidence is often unavailable when fibromyalgia is the underlying condition. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (noting that, due to the "elusive" and "mysterious" nature of fibromyalgia, medical evidence confirming the alleged severity of the impairment almost never exists). When the severity and limiting effects of fibromyalgia pain cannot be confirmed by objective medical evidence, the ALJ must:

> consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms.

SSR 12-2p, 2012 SSR LEXIS 1 *14 (Jul. 25, 2012). Here, the ALJ did just that.

The ALJ applied proper legal standards and reached a conclusion supported by substantial evidence in evaluating Avery's subjective symptom complaints. 42 U.S.C. §§ 405(g), 1383(c)(3); *Elam*, 348 F.3d at 125. The ALJ's decision demonstrates that she considered Avery's subjective complaints of constant pain. However, the ALJ also cited records stating that Avery had not sought treatment in a year and a half. (Tr. 22, citing Ex. C12F/2). The ALJ noted

normal exams, but she also cited Avery's activities of daily living and medical records

suggesting that she was not as limited as her statements suggested:

> Further, because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) and Social Security Ruling 16-3p describe factors that should be considered when assessing the consistency of the claimant's symptoms with the medical evidence. The claimant's allegations are not fully supported by the objective medical evidence or the treatment history as detailed herein. The record reflects that the claimant testified that during the relevant period she was in constant pain, spent most of the day in bed, elevated her legs, experienced regular swelling in the knees, could only stand and walk for 20 minutes at a time, and experienced symptoms related to her mental impairments. Yet, her mental status and physical examinations of record were largely normal (Ex. C2F/4, 6; C3F/4, 20; C7F/8, 16, 30, 92; C11 F/3, 9, 25; C12F/2-3; C13F/2, 10; C14F/6; C15F/7 and C16F/4). Further, the record reflects that during this period the claimant was the sole caretaker of her ill parents (Ex. C8F/3). Moreover, with respect to her mental impairments, medical personnel noted that they believed the claimant was seeking support rather than active change (Ex. C11F/19). The medical evidence concerning her impairments, provides only limited support for the claimant's allegations, and tends to suggest that her symptoms are not as severe, persistent or limiting as he has alleged.

(Tr. 23).

The ALJ complied with the regulations by: (1) recognizing that Avery's symptoms may

not be fully supported by objective medical evidence; (2) considering all of her impairments –

including her fibromyalgia – in light of the medical and other evidence in the record; and (3)

clearly explaining that she rejected Avery's subjective symptom complaints because her

testimony concerning the intensity, persistence, and limiting effects of her symptoms was not

consistent with her daily activities, the intermittent treatment she sought *and* the medical

evidence. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 416.920(e), 416.929(c)(3); SSR 96-8p,

1996 SSR LEXIS 5; SSR 16-3p, 2016 SSR LEXIS 4; SSR 02-1p, 2002 LESIS 1 at *18; *Felisky*,

35 F.3d at 1036; (Tr. 17-19).

Avery argues that the ALJ only compared her complaints to the objective findings. But

that is not true. The ALJ considered other evidence in the case record, including Avery's daily

activities, medications or other treatments Avery sought (or didn't seek) to alleviate symptoms; the nature and frequency of Avery's attempts to obtain medical treatment for symptoms; and statements by medical providers about Avery's symptoms.

Avery disagrees with the ALJ's treatment of her testimony. But the court is not permitted to reevaluate the facts or reach different conclusions on how those facts should be characterized. If an ALJ discounts or rejects a claimant's subjective complaints, she must state clearly her reasons for doing so. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). But, an ALJ's decision need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as she acknowledged and examined those [factors] before discounting a claimant's subjective complaints." (quotation omitted)). Although the ALJ must discuss significant evidence supporting her decision and explain her conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which she relied into a single paragraph. *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (6th Cir. 2010) (noting that the court "read[s] the ALJ's decision as a whole and with common sense").

Reading the ALJ's decision as a whole, she did not fail to consider evidence, rely only upon the objective medical evidence, cherry-pick the evidence, or play doctor. *Buckhannon*, 368 F. App'x at 678-79. Instead, she complied with the regulations and applicable Social Security Rulings by considering all the evidence in the longitudinal record, including the objective medical findings, Avery's testimony regarding her symptoms and daily activities, gaps in her treatment history, and the medical opinion evidence. 20 C.F.R. §§ 404.1520(e), 404.1529(c)(3), 416.920(e), 416.929(c)(3); SSR 96-8p, 1996 SSR LEXIS 5; SSR 16-3p, 2016 SSR LEXIS 4; SSR 02-1p, 2002 LESIS 1 at *18; (Tr. 15-21). And, to the extent the ALJ found Avery's

subjective complaints credible – *e.g.*, the effects of her pain on her ability to concentrate – the ALJ appropriately restricted Avery's RFC, limiting her to simple, routine tasks.  (Tr. 20,  22).  Substantial evidence supported the ALJ's conclusion that Avery's subjective complaints were not entirely consistent with other evidence in the record.

Moreover, reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff.  *Whicker-Smith*, 2019 U.S. Dist. LEXIS 29085, *16-17 (S.D. Ohio, Feb. 25 ,2019).  Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony when there are inconsistencies and contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004).

Because the ALJ applied proper legal standards in evaluating Avery's subjective symptom complaints and in determining her RFC, and because her conclusions were supported by substantial evidence, the ALJ's decision fell within the Commissioner's "zone of choice."  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Elam*, 348 F.3d at 125; *Jones*, 336 F.3d at 476; *Rogers*, 486 F.3d at 241; *Mullen*, 800 F.2d at 545.  The court must reject Avery's complaints about the ALJ's handling of her subjective symptom complaints.

E.    **Avery's Limitations in Concentration, Persistence or Pace**

Finally, Avery argues that the ALJ's RFC finding is not supported by substantial evidence because it did not account for her moderate limitations in concentration, persistence and pace.  ECF Doc. 11 at 13-14.  At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is an assessment of a claimant's ability to do work despite her impairments.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

Avery argues that the ALJ was required to adopt the opinion of Dr. Haskins that she could sustain tasks so long as they did not involve more than moderate time and production demands.  (Tr. 114-116).  ECF Doc. 11 at 14.  As already noted, Dr. Haskins was a non-examining, state agency consultant who examined Avery's record in 2015, before Avery re-filed her application for SSI.  The ALJ was not required to assign any specific weight to Dr. Haskins's opinion or to explain the weight she did assign.  Rather, the ALJ was required to consider all the relevant evidence including the claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. §§ 404.1529(a), 416.929(a).

Avery argues that the holding of *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516-517 (6th Cir. 2010) – "that it is reversible error not to include speed and pace-based restrictions in the RFC for a disability claimant who is found to have such limitations at prior steps of the sequential evaluation" applies to the ALJ's RFC determination in this case.  However, *Ealy* does not necessarily apply here.  In *Ealy,* the ALJ adopted the opinion of a state agency physician but then failed to incorporate all of the opinion's information in a hypothetical question to the VE.  Because the hypothetical question inadequately described Ealy's limitations, the VE's conclusion that the hypothetical individual could perform certain work was not substantial evidence that *Ealy* could perform that work.  *Ealy,* 594 F.3d at 517.

Here, Avery does not really argue that the ALJ provided an incomplete hypothetical question to the VE.  Instead, she argues that the ALJ should have adopted the limitations from Dr. Haskins's opinion into her RFC.  As already stated, the ALJ was not required to adopt those limitations into her RFC and the court would not remand the ALJ's decision on that basis.  However, because the court is remanding the case for further consideration of the treating source opinion (which also stated that Avery would have difficulty concentrating and staying on task), the ALJ should consider all of the medical source opinions and other relevant evidence in determining Avery's RFC at Step Four.

## VI.    Conclusion

Because the ALJ failed to apply proper legal standards in evaluating the weight to assign to Dr. Griggs's treating source opinion and may not have considered all the relevant evidence when determining Avery's residual functional capacity, the Commissioner's final decision denying Avery's application for SSI is VACATED and the case is REMANDED for further consideration consistent with this order.

Dated: May 14, 2020

Thomas M. Parker
United States Magistrate Judge